UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25cr33 DRL |
| NEIL LACHMUND, | |
| Defendant. | |

SENTENCING MEMORANDUM

Neil Lachmund produced child pornography and obscenity, then shared it with others, including to undercover agents. A search of his home revealed over 55,000 images and 25,000 videos of child sex abuse material. He pleaded guilty to a three-count information—sexual exploitation of a child, 18 U.S.C. §§ 2251(b), (e), production of child pornography, 18 U.S.C. §§ 2251(a), (e), and production and transportation of obscene material, 18 U.S.C. § 1465.

SENTENCING GUIDELINES

The court must calculate the guideline range correctly, then decide what sentence is right and reasonable for this defendant. *Dean v. United States*, 581 U.S. 62, 67 (2017); *United States v. Swank*, 37 F.4th 1331, 1334 (7th Cir. 2022). The 2024 guidelines apply. *Peugh v. United States*, 569 U.S. 530, 537-38 (2013). Without objection, the court adopts as its findings ¶ 1-195 of the revised presentence report, save a slight quibble with the last clause of ¶ 168.

On count 1 (sexual exploitation), Mr. Lachmund starts at level 32, U.S.S.G. § 2G2.1(a), thereafter adjusted to level 40 by three enhancements—four levels because the material involved a minor victim under 12 years old, U.S.S.G. § 2G2.1(b)(1)(A), two levels because of his knowing

distribution of child sex abuse material, U.S.S.G. § 2G2.1(b)(3), and two levels because of his relationship, U.S.S.G. § 2G2.1(b)(5).

On count 2 (production of child pornography), he starts at level 32, U.S.S.G. § 2G2.1(a), thereafter adjusted to level 40 by four enhancements—two levels because the offense involved sexual contact, U.S.S.G. § 2G2.1(b)(2)(A), two levels because of his knowing distribution of child sex abuse material, U.S.S.G. § 2G2.1(b)(3), two levels because of his relationship, U.S.S.G. § 2G2.1(b)(5), and two levels because he knew the victim was particularly vulnerable, U.S.S.G. § 3A1.1(b)(1).[1]

On count 3 (production and transportation of obscene material), Mr. Lachmund starts at level 10, U.S.S.G. § 2G3.1(a), thereafter adjusted to level 16 by three enhancements—two levels because he used a computer, U.S.S.G. § 2G3.1(b)(3), two levels because of his knowing distribution, U.S.S.G. § 2G3.1(b)(1)(F), and two levels because he knew the victim was particularly vulnerable, U.S.S.G. § 3A1.1(b)(1).

The guidelines group the three counts and add two levels for multiple counts, which when tallied with the highest count brings him to level 42. U.S.S.G. § 3D1.4. Five more levels are added because he engaged in a pattern of prohibited sexual conduct, U.S.S.G. § 4B1.5(b)(1), whereas his clear and timely acceptance of responsibility reduces the calculus three levels, U.S.S.G. § 3E1.1, thereby concluding overall at level 43 merely because the sentencing table doesn't go to level 44, U.S.S.G. chap. 5A app. n.2.

---

[1] For reasons given at the hearing, this enhancement applies to counts 2 and 3. *See, e.g., United States v. Newsom*, 402 F.3d 780, 785 (7th Cir. 2005); *United States v. Snyder*, 189 F.3d 640, 649 (7th Cir. 1999); *see also* U.S.S.G. § 3A1.1(b)(1) app. n.2; *United States v. Julian*, 427 F.3d 471, 489 (7th Cir. 2005).

Mr. Lachmund falls in criminal history category II with two criminal history points. There the guidelines recommend a sentence of life imprisonment, U.S.S.G. chap. 5A, albeit they define the contemplated "total punishment" (a seeming term of art) as one structured over multiple counts, and, later, so long as the sentence per count doesn't exceed its statutory maximum, U.S.S.G. §§ 3D1.5, 5G1.2(b)-(d) and app. n.1, n.3; *see United States v. Esposito*, 1 F.4th 484, 487 (7th Cir. 2021) ("statutory maximum has no bearing on the calculation of the guideline range for total punishment") (cleaned up); *United States v. Veysey*, 334 F.3d 600, 602 (7th Cir. 2003) ("sentencing guidelines direct the judge, when there are multiple counts of conviction, to impose maximum and consecutive sentences to the extent necessary to make the total punishment equal in severity to what the guidelines would require were it not for the statutory maxima"); *United Sates v. De La Torre*, 327 F.3d 605, 611 (7th Cir. 2003) (interpreting "total punishment" as determined by the guideline calculation); *United States v. Griffith*, 85 F.3d 284, 289 and n.2 (7th Cir. 1996) (defining "total punishment" as function of guidelines for all criminal conduct); *see also United States v. Rogers*, 2025 U.S. App. LEXIS 10309, 6-8 (7th Cir. Apr. 29, 2025). By federal statute, the mandated sentencing range is 15-30 years on counts 1 and 2, 18 U.S.C. § 2251(e), and the maximum on count 3 is 5 years, 18 U.S.C. § 1465.

## DISCUSSION

The court decides this sentence under 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005). Turning to the statutory factors, the court must arrive at a reasonable sentence— one sufficient but not greater than necessary to satisfy the statute's purposes. 18 U.S.C. § 3553(a). This is a rare case—for many reasons.

A father knows to protect children. Neil Lachmund instead molested and exploited young kids, some closest to him, then shared sexually explicit videos and images of them over the

3

internet with strangers. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(5), (a)(6).[2] His activity over time will not be recounted step-by-step here, nor could one easily do so given its scope and gravity, but it was vile and heinous. The victims weren't even teenagers. There was grooming. He seemingly scripted scenes at times and participated during others. He acted at times when then-victims (now-survivors) were asleep, unaware, and vulnerable—"creeped" on them to use his word. He abused the sacred trust placed in him. It would be difficult to find a case much worse, nor would one want to do so.

A Marine knows to protect the innocent. One should not sentence Mr. Lachmund as though this were murder, nor will the court, but in producing sex abuse material of these victims and of this type he was murderous of their innocence—using the privacy of their rooms, their faces, their teddy bears, even their names and the very dignity of their minds and bodies. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(5). There is a multidimensional permanence to this. *See Paroline v. United States*, 572 U.S. 434, 457 (2014). Absent concerted therapy, and likely the graces beyond those human gifts of experts, this will affect these victims in lifelong ways, and tragically most any relationship they have. Mr. Lachmund also distributed videos and thereby contributed to the often-permanent illicit market, and one that has every chance to survive, as an ignoble "series," even the lifetimes of these brave survivors. He engaged in explicit talk and filesharing (via Kik) with an undercover agent—and thank goodness for that, because his communications about the abuse he exacted on certain victims showed no remorse, only more deviancy. And the risks to the third victim likely would have grown greater. Given his criminal patterns, it comes as no

---

[2] *See also United States v. Myers*, 355 F.3d 1040, 1042-43 (7th Cir. 2004); United States Sent. Comm'n (USSC), *Federal Sentencing of Child Pornography: Production Offenses* 1-2, 26-42 (2021) (recommending consideration of the offender's proximity and relationship to victims, participation with victims during the production offense, and propensity to engage with child pornography or exploitative conduct).

surprise that he is classified as a repeat and dangerous sex offender, despite no prior criminal history of this type (a not unusual fact).³

A former fifteen-year police officer knows to respect the law. Mr. Lachmund nonetheless persisted for years—against one victim for at least four years (2015-2019), another victim for over three years (2018-2021), and then a third victim for nearly two years (2023-2025). The sheer duration of his criminal conduct takes this case well outside the norm. If one can commit such atrocious crimes—over a decade, unflinchingly, against numerous children, and despite gifts in life—there is little measure of hope that something new will offer the degree of deterrence and public protection that this record commands. *See* 18 U.S.C. §§ 3553(a)(2)(B), (a)(2)(C).

Hidden in the darkness of his home was much more. He had amassed over 55,000 images and 25,000 videos of child pornography on various devices. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(5), (a)(6).⁴ This doesn't happen overnight. It is the most sprawling the court has encountered. In equivalent guideline terms, this would be over 1.9 million images. Much of this collection exists outside the calculus for these three counts. How would one even begin to identify the number of victims in this collection? Included were depictions of sexual abuse of prepubescent children and infants. Among the obscene and sexually explicit were videos of those closest to him, images altered with artificial intelligence to make them appear nude or sexualized, and many

---

³ *See also* USSC, *Federal Sentencing of Child Pornography: Production Offenses* 18 (2021) (only 21 percent of offenders in CHC III or higher).

⁴ *See also United States v. Deming*, No. 3:24cr33, slip op. at 2 (N.D. Ind. Aug. 19, 2025); *United States v. Eash*, 679 F. Supp.3d 768, 771 n.1 (N.D. Ind. 2023); USSC, *Federal Sentencing of Child Pornography: Non-Production Offenses* 4 (2021) (median of 4,265 images); USSC, *Federal Child Pornography Offenses* 320 (2012) (recommending consideration of the content of an offender's collection, including volume, types of sexual conduct depicted, ages of victims, and extent to which an offender has maintained a collection over time).

organized or titled in ways to identify them by name for ready use. Think of the sheer time devoted to his appetites in lieu of something productive.

Mr. Lachmund was an established producer and consumer of depraved images, each one a cutting retraumatization of the victim. But he also had sexual contact, and he soon spread the word. The harm to the public—children near and far from him, and the people who support them—is rather immeasurable. Survivors live in torment and fear, still wrestling with a hurricane of emotions. One recounts a sleepover with a friend in which they sought mutual refuge, huddled together so he couldn't get to them. She tells of other nights when he touched her, or when she saw him peering through her door, cellphone lit to photograph her, or when she woke up with her pajamas disheveled, though she had piled pillows and stuffed animals on the side of her bed for protection. The depth and methods of his predation—really on anyone he could easily reach—both distinguish him and leave no question that the public's protection, and the protection for those most vulnerable in our community, must not be short-lived. *See* 18 U.S.C. §§ 3553(a)(2)(C), (a)(6).

This is a tragic story all around. For a time, Mr. Lachmund built a stable, respectable life. *See* 18 U.S.C. § 3553(a)(1). A self-described "great but emotional" childhood was punctuated with spells of anger and heartache borne from his parents' divorce, for which he received some counseling as he dealt with remarried parents and the pulls of two families. No abuse occurred in these homes, but as a young boy he was never treated for sexual assault by an older kid in the neighborhood. Though abuse often begets abuse, Mr. Lachmund went on to graduate high school, attend some college, enlist in the United States Marine Corps, wed for 18 years, buy a home, and honorably discharge from the USMC as a bilingual cryptological translation-linguist (a sergeant or E-5 rank) before becoming a police officer. He found fun and humor as a drummer.

6

Whether it lurked or not, for over 35 years there were no seeming signs of any dark criminality—merely two misdemeanors from unhealthy alcohol use in an otherwise well-crafted life. *See id.*

His downward spiral began in 2015 as he molested a minor child and produced child pornography, while still in a position of public trust in law enforcement. He divorced in 2017, and everything went further south in a hurry. He lost his wife. His alcohol use grew. He resigned under pressure from the police force after his second conviction for operating a vehicle while intoxicated. Depression and post-traumatic stress set in. By the time he sought treatment in 2018 and 2019, he was producing obscene material of another victim. Alcohol use became an on-again and off-again affair, and he stopped taking prescribed medicine for his depression in 2021 and instead foolishly self-treated with methamphetamine (once weekly until his arrest this year). Even today he has an imperfect understanding of his substance dependence. He saved the government the burden even of an indictment, pleading immediately, albeit after he distributed media to undercover agents and his cache of content was discovered. *See id.*

The last decade has been decisive, and today that will be truer still. The worries of other child pornography guideline ranges (say, for mere possession) aren't present on this record. The guidelines often pose a best hope of uniform sentencing practices, *see* 18 U.S.C. §§ (a)(1), (a)(2), (a)(6), but it is notable that this case is so serious that they, in a manner of speaking, "give up" or go "off grid"—Mr. Lachmund would fall in a higher offense level if they only had one, though one cannot really conceive of anything more than "life," and the guidelines fall back to a concept of "total punishment" that, as a deliberative matter, seems more appropriate for the court's discretion under § 3553(a) than their pure mechanics, not least when all three statutes variably require "less." The court works outside the guidelines today given all the sentencing factors.

A statutory maximum is often reserved for the worst; how truer this must be for consecutive statutory maxima across three different counts. Heartbreakingly, the court sees cases too where offenders have used physical violence or threats, engaged in masochism or sadism, exploited infants, or reengaged after prior convictions or more criminal history. There may be little margin between Mr. Lachmund and others on any one count, made smaller still given the many victims here, some too personal in his orbit, *see* 18 U.S.C. § 3553(a)(6), but one should not, in the overshadow of everything that in many ways make his conduct some of the worst, ignore the good over 35 years beforehand, likely remnants of his young history, or the prospect of some foothold in treatment or counseling, even if ineffective thus far, *see* 18 U.S.C. § 3553(a)(1). His longest prison sentence to date is five days, and taking these counts to their full extreme would be 65 years. For a man already 46 years of age, today's sentence will weigh heavily, taking him well into the twilight of his life, if not being more absolute than that, without need to make him 111 years old. At the same time, given the seriousness of these offenses, their duration and gravity, the many young victims and their harm, the lasting nature of that harm, the violation of trust, and the utmost need for deterrence (specific and general) and public protection, today's sentence cannot be reasonably lower. Even Mr. Lachmund has a somewhat clear-eyed, even if myopic, view of the seriousness of his transgressions—he asks for 30 years (360 months).

Based on the prevailing § 3553(a) factors, an aggregate sentence of 648 months—324 months on count 1 (sexual exploitation of a child) and 324 months on count 2 (production of child pornography), to run consecutively, and 60 months on count 3 (production and transportation of obscene material), to run concurrently to all other counts—is sufficient but not greater than necessary to satisfy federal sentencing goals.

The court must impose a term of supervised release of at least 5 years to life on counts 1 and 2, 18 U.S.C. § 3583(k); *see* U.S.S.G. § 5D1.2(b)(2) (recommending 5 years to life), and may impose a term of supervised release no higher than 3 years on count 3, 18 U.S.C. § 3583(b)(2); *see* U.S.S.G. § 5D1.2(a)(2) (recommending 1 to 3 years). Terms of life supervision on counts 1 and 2, to run concurrently, with no duplicate supervision on count 3, are appropriate. Should he be released sooner, there should be no time in which Mr. Lachmund isn't being supervised. His release will be governed by the recommended conditions for the reasons stated here and in the revised presentence report.

Restitution to the victims is mandatory under 18 U.S.C. § 2259, *see also* U.S.S.G. § 5E1.1; 18 U.S.C. § 3553(a)(7). Mr. Lachmund sold his property to pay debts and commissary; none of those funds has been put toward restitution, though the total he owes remains undetermined. For good cause, the court grants the government's motion to hold a restitution hearing under 18 U.S.C. § 3664(d)(5), with that hearing to occur on December 15, 2025 at 2:00 pm, with the parties to meet and confer and the government to file either a stipulation or any restitution request no later than 7 days beforehand.

The Justice for Victims of Trafficking Act, 18 U.S.C. § 3014(a), requires a mandatory assessment of $5,000.00 for any non-indigent person convicted of these offenses. The statute does not define indigency. The court may consider the defendant's financial circumstances now and in the future. *United States v. Otradovec*, 72 F.4th 794, 797 (7th Cir. 2023). Given Mr. Lachmund's financial condition, the court finds him indigent for this assessment.

Mr. Lachmund is subject to a mandatory assessment of up to $50,000.00 under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA). *See* 18 U.S.C. § 2259A(a)(3); *United States v. Johnson*, 131 F.4th 811, 814 (7th Cir. 2025). The amount must

9

account for the factors in 18 U.S.C. §§ 3553(a) and 3572. 18 U.S.C. § 2259A(c). The court cannot waive this assessment and thereby seemingly make it zero, but it can exercise discretion in setting the amount. *Johnson*, 131 F.4th at 814. Mr. Lachmund must pay restitution, *see* 18 U.S.C. § 3572(a)(4), and that may not be insubstantial given the number of victims. Considering the sentencing factors—and heavily, in priority, restitution, his personal circumstances, and the need for deterrence or public protection, albeit for someone who will spend most of his remaining life incarcerated or elderly—the court imposes a total assessment of $5,000.00—$2,500.00 each on counts 1 and 2. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(7).

Because of his other financial obligations, Mr. Lachmund cannot pay the fines recommended by the guidelines even if afforded a generous installment payment schedule, so the court imposes no fine. A special assessment of $100.00 on each count is mandatory. 18 U.S.C. § 3013(a)(2)(A).

## SENTENCE

Accordingly, it is the court's judgment that the defendant, Neil Lachmund, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for an aggregate term of 648 months—324 months on count 1 and 324 months on count 2, these terms to run consecutively, and 60 months on count 3, this term to run concurrently to all other counts.

Under 18 U.S.C. § 3585, the court leaves it to the Bureau of Prisons to determine the appropriate amount of time served to be credited toward the defendant's sentence. The court recommends the Bureau of Prisons designate as the place of the defendant's confinement, consistent with his security classification as determined by the Bureau of Prisons, a facility where he may be placed reasonably near his mother living in northern Indiana.

Upon release from prison, the defendant will be placed on supervised release for life on each of counts 1 and 2, to run concurrently, with no duplicate supervision on count 3. While on supervised release, he must comply with the terms of supervision set forth in ¶ 196-213 of the revised presentence report, which paragraphs the court incorporates as part of this sentence having made an independent judgment that they should be imposed. The defendant expressly waived reading of these supervisory conditions. The court directs the probation officer to provide the defendant with a written statement of all conditions.

The court sets, based on the government's good cause, a hearing to determine restitution for December 15, 2025 at 2:00 p.m., recognizing that restitution is mandatory to the extent proven by the government at that hearing.

The court imposes no other fine or assessment, except that he must pay to the United States a special assessment of $300.00 and an AVAA assessment of $2,500.00 on each of counts 1 and 2 for a total AVAA assessment of $5,000.00, both due immediately.

The court grants the government's motion to seal [16] and its oral motion to dismiss the forfeiture allegations of the information (forfeiture has been handled administratively).

SO ORDERED.

September 25, 2025                    *s/ Damon R. Leichty*
                                      Judge, United States District Court

cc:  Mr. Neil Lachmund